EVERETT A. HILL *vs.* ERMINA CABRAL.

FEBRUARY 12, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is an action of the case to recover damages for personal injuries resulting from the negligent operation of the defendant's automobile by her "servant and agent". Following a verdict in favor of the plaintiff, rendered by a jury in the superior court, the defendant's motion for a new trial was denied by the trial justice. The case is before us on the defendant's bill of exceptions to this and to other rulings by the trial justice during the trial.

When the case was before us previously, we sustained the plaintiff's exception to a direction of verdict for the defendant and accordingly remitted the case for a new trial. *Hill v. Cabral,* 62 R. I. 11. The exceptions now being pressed relate to the second trial.

Since the defendant raises no question concerning proof of negligence on the part of the operator of the defendant's automobile or of plaintiff's damages resulting therefrom, or

of plaintiff's freedom from contributory negligence, we shall repeat only the important facts that are necessary to consider the defendant's exceptions.

The plaintiff was struck and badly injured by the defendant's automobile which was being operated by her son Joseph. The accident happened shortly after 1 o'clock in the early morning of November 25, 1934, while the son was driving his friend Cournoyer back to a camp. Previously, during the afternoon of November 24, 1934, the son had asked the defendant's permission to use her automobile but she had expressly refused such permission, because his operator's license had been suspended or revoked.

Shortly thereafter, about 5 o'clock on the same afternoon, the defendant left her home to visit her sister. At that time the automobile was parked on her premises in a shed-garage having no doors. Its ignition was locked and the keys were "hid" by her in a closet or cupboard in the kitchen of the house. After the defendant had gone, her son Joseph returned home, searched for and found the keys to the automobile and drove it to several places in Providence and Warwick upon what apparently was "a frolic" in which he and Cournoyer, but not the defendant, were interested. The defendant returned home from her sister's about 9:30 p.m. and discovered that the automobile and the keys had gone. The defendant, however, did not report to the police the disappearance of the automobile or keys and did nothing whatever to locate or recover them.

Under her third exception, the defendant contends that the trial justice erred in denying her motion for a directed verdict. The grounds for such motion were that there was no evidence tending to show that the automobile was being operated by Joseph with her consent; and second, that even if there were such evidence, there was none tending to show that he was then using her automobile as her agent and upon her business. She bases these grounds on the conten-

tion that, by virtue of P. L. 1929, chap. 1429, sec. 10, as amended by P. L. 1933, chap. 2046, section 1, proof of registration of the automobile in her name constituted a mere presumption and not evidence. All the defendant's contentions on this point have been carefully considered and are governed by our decisions in previous cases, in which we have interpreted the meaning and effect of that statute as it was at the time of this accident. *Hill* v. *Cabral, supra; Gemma* v. *Rotondo,* 62 R. I. 293; *Conant* v. *Giddings,* 65 R. I. 79, 13 A. 2d. 517.

Applying to the instant case the construction of the statute that was determined in those cases, the trial justice was correct in refusing to direct a verdict. There was proof of registration of the automobile in the defendant's name. By virtue of the statute, that proof constituted *prima facie* evidence—not a mere presumption—of the fact that, at the time of the accident, the son was operating the defendant's automobile with her consent, as her agent and upon her business, and within the scope of his authority from her. In other words, it constituted *prima facie* evidence that he was operating the automobile in all respects necessary to render the defendant liable for his negligent operation as at common law.

Upon such a view of the statute and considering the other evidence most favorably to the plaintiff, as we must on this motion, there was conflicting evidence upon material issues to be determined as facts by the jury. The trial justice was therefore correct in denying the defendant's motion for a directed verdict, and her third exception is overruled.

In support of her sixth exception, to the denial of her motion for a new trial, the defendant chiefly contends that certain of the special findings by the jury are inconsistent with each other and with the general verdict; and that the uncontradicted evidence shows that the operator was not

the defendant's agent or on her business and that therefore the verdict was clearly against the law and the evidence.

The first of these contentions requires our consideration of the four requests for special findings, which the jury answered as follows: "(1) The jury find specially that at the time of the accident the automobile was not being used upon business or affairs of the defendant; (2) at the time of the accident the automobile was being used with the knowledge of the defendant; (3) at the time of the accident the automobile was being used not with the given consent of the defendant but with implied consent; (4) at the time of the accident the car was being operated against the defendant's will."

In view of certain of these findings, the jury apparently accepted as true the evidence for the defendant. The trial justice in his rescript expressly approved her veracity and that of her witnesses. This evidence is not, in itself, inherently improbable or otherwise necessarily unworthy of credence. It shows that defendant's son had taken her automobile originally without her knowledge or consent—indeed, after her express refusal of requested permission—and that he then proceeded with his friend Cournoyer upon an enterprise in which the defendant was in no way interested or benefited.

Under such evidence, if believed, the son would not then be operating the defendant's automobile as her agent or on her business. Even if the evidence supported the conclusion that it was being operated at the time of the accident with her "implied consent", that, without more, would not subject the defendant to liability at common law for the son's negligent acts. Therefore, the first special finding, that the automobile was not being used upon the business or affairs of the defendant, is consistent with the evidence for the defendant, if it was believed; but it is inconsistent with the general verdict. Moreover, the third and fourth

special findings appear to be inconsistent with each other; and the fourth is inconsistent with the general verdict.

The third special finding reads: "at the time of the accident the automobile was being used not with the given consent of the defendant but with implied consent." This is entirely understandable and consistent as shown by the trial justice. The defendant knew, from 9:30 p.m. on November 24 to 1 o'clock the next morning, of the disappearance of her automobile, as well as the absence of her son who had previously asked for permission to use the automobile; and yet she failed to report her loss to the police or to take any other action that was reasonably calculated to locate or recover the automobile in time to probably have avoided the accident. Such complete inactivity, together with her knowledge of other facts in evidence, provided a ground upon which the jury could reasonably have inferred that, although she had originally refused permission, she then impliedly consented because she knew her son had the automobile and thereafter was unwilling, for obvious reasons, to have it taken away from him by the police. The third special finding therefore is entirely consistent with a reasonable view of all the evidence and with the general verdict.

However, by their fourth special finding, the jury determined that "at the time of the accident the car was being operated against the defendant's will." How it could be then operated "with implied consent" of the defendant and yet, at the same time, "against the defendant's will" is difficult to reconcile. The ordinary meaning of the word "consent" is defined in Webster's New International Dictionary (2d ed. Unabridged) as follows: "1. Voluntary accordance with, or concurrence in, what is done or proposed by another; acquiescence . . . "; and as used in "4. Law. Capable, deliberate, and voluntary assent or agreement to, or concurrence in, some act or purpose, implying physical and mental power and free action."

According to such a concept of the defendant's consent, as apparently expressed in the jury's third special finding, it presumed a voluntary acceptance by or concordance *with* the defendant's will; and therefore the fourth finding, that the automobile was being operated at the same time *against* her will, is inconsistent with the third special finding.

The trial justice in his rescript has given us his explanation of what he thought the jury meant by these findings. The difficulty we experience with such explanation is that the fourth special finding, as returned by the jury, specifically relates to the *time of the accident* and not to the time the automobile was taken, as he seems to consider in his rescript. If the jury had intended, as the trial justice indicated, to have the fourth special finding relate to a different time from that contemplated in the third special finding, they did not say so and did not add any language, as they did in the third finding, which would show such an intention. Both findings, as requested and returned, were addressed to the time of the accident. So viewed, they appear to us to be inconsistent with each other, and the fourth is obviously inconsistent with the general verdict.

The plaintiff argues, however, that this statute was intended to extend the substantive law to create a new form of statutory agency and liability, predicated upon the owner's mere consent, express or implied; and that the evidence clearly shows proof of implied consent. If that were intended by the legislature, it is difficult to appreciate why, in amending P. L. 1929, chap. 1429, sec. 10, this statute dropped certain language appearing in the previous statute, wherein the operator was "deemed to be the agent of the owner . . ." upon proof that the automobile was being operated with the owner's consent, express or implied. Our construction of the statute, as it existed at the time of this accident, was made in the cases already referred to, and governs the instant case.

Considering the inconsistency between the special findings and general verdict—see *Healey* v. *N. Y., N. H. & H. R. R. Co.,* 20 R. I. 136—and the uncontradicted evidence for the defendant, as apparently believed by the jury and approved by the trial justice, we are of the opinion that the defendant's sixth exception should be sustained. In view of this conclusion, which requires a new trial, we need not consider or pass upon the remaining exceptions of the defendant.

The defendant's third exception is overruled, her sixth exception is sustained, and the case is remitted to the superior court for a new trial.

*Mullen & Roberts, John E. Mullen, Wilfrid E. McKenna,* for plaintiff.

*Quinn & Quinn, Patrick H. Quinn, James B. Linehan,* for defendant.